UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                        :
MIGUEL ANGEL DE LANCER,                                 :
                                                        :
                                    Plaintiff,          :
                                                        :               25-CV-6893 (VSB) (SDA)
                        -against-                        :
                                                        :               **<u>OPINION & ORDER</u>**
                                                        :
THE MORGAN GROUP LLC, *et al.*,                         :
                                                        :
                                    Defendants.         :
                                                        :
---------------------------------------------------------X

<u>Appearances:</u>

Delmas A. Costin , Jr.,
The Law Office of Delmas A. Costin, Jr.
Bronx, NY
*Counsel for Plaintiff*

Stephen Paul Pischl
Clifton Budd & DeMaria, LLP
New York, NY
*Counsel for Defendants*

<u>VERNON S. BRODERICK</u>, United States District Judge:

On April 7, 2026, the parties filed a motion seeking approval of the settlement agreement

reached in this Fair Labor Standards Act ("FLSA") case.  (Doc. 56 ("Mot."); *see also* Doc. 56-1

("Settlement Agreement").)  Parties may not privately settle FLSA claims and stipulate to the

case's dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) without the approval

of the district court or the Department of Labor.  *See Samake v. Thunder Lube, Inc.*, 24 F.4th

804, 807 (2d Cir. 2022); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir.

2015).  In the absence of Department of Labor approval, the parties must demonstrate to me that

their settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (internal quotation marks omitted).

Having reviewed the materials before me, I find that the Settlement Agreement cannot be deemed fair and reasonable without additional information or revisions. Therefore, the parties' joint motion seeking an order approving the Settlement Agreement is DENIED without prejudice with leave to refile.

## I.      Legal Standard

To determine whether a settlement is fair and reasonable under the FLSA, I "consider the totality of circumstances, including but not limited to the following factors:  (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).  In requesting attorneys' fees and costs, "[t]he fee applicant must submit adequate documentation supporting the [request]." *Id.*  "A reasonable hourly rate is a rate 'in line with . . . prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (per curiam) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (alterations adopted)).  A fee may not be reduced

"merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Fisher*, 948 F.3d at 602 (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)).

"When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Fisher*, 948 F.3d at 597.

## II.    Discussion

I have reviewed the Settlement Agreement, (Doc. 56-1), the parties' joint letter in support of approval of the settlement, (Mot.), a New York State Court decision regarding attorneys' fees, (Doc. 56-2), and records of Plaintiff's attorneys' billing and costs, (Doc. 56-3; Doc. 56-4), in order to determine whether the Settlement Agreement's terms are fair, reasonable, and adequate. I find that the parties' Settlement Agreement does not include all the necessary information to find the terms adequate and reasonable.

### A.    *Settlement Amount*

I first consider the settlement amount contemplated by the Settlement Agreement.  The Complaint asserts four claims:  (1) violation of the overtime provision of the FLSA, (Doc. 16 ("Compl.") ¶¶ 109–13); (2) violation of the minimum wage provision of the New York Labor Law ("NYLL"), (*id.* ¶¶ 114–21); (3) violation of the overtime provision of the NYLL, (*id.* ¶¶ 122–26); and (4) violation of the wage notice and statement requirements of the NYLL, (*id.* ¶¶ 127–31).

When assessing the fairness of a settlement amount in a FLSA action, courts in this circuit consider a "maximum possible recovery," which includes all possible bases entitling a FLSA plaintiff to monetary relief, such as "liquidated damages." *See, e.g., Cronk v. Hudson*

3

*Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 316, 322 (S.D.N.Y. 2021); *Zorn-Hill v. A2B Taxi LLC*, No. 19-CV-1058, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) ("The percentages provided by the Parties undercount the [p]laintiffs' alleged damages and best-case return" because "they do not include liquidated damages"); *Vargas v. Pier 59 Studios L.P.*, No. 18-CV-10357, 2020 WL 8678094, at *1 (S.D.N.Y. Sept. 10, 2020) ("Plaintiff's calculation of potential recovery does not appear to include the possibility of liquidated damages, which FLSA authorizes at a rate of 100 percent of unpaid wages"). "The amount of liquidated damages is equal to 100% of the amount owed to the Plaintiffs in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours." *Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020), *report and recommendation adopted sub nom.*, 2021 WL 2139441 (S.D.N.Y. May 26, 2021).

Because of this, parties seeking approval of a FLSA settlement must supply calculations addressing all possible sources of a plaintiff's potential damages. *See, e.g.*, *Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2967, 2022 WL 576300, at *2 (S.D.N.Y. Feb. 25, 2022) (calculating damages based on "unpaid minimum wage, unpaid overtime premiums, unpaid spread of hours premiums, liquidated damages, wage notice and wage statement damages, and interest as of the date of the mediation statement." (internal quotation marks omitted)); *Kanchanawong v. Amobee, Inc.*, No. 21-CV-4409, 2021 WL 6500139, at *2 (S.D.N.Y. Dec. 27, 2021) (assessing a settlement breaking down the sources of possible damages as stemming from "around $51,000 in unpaid wages, $51,000 in liquidated damages, and $10,000 for violations of the Wage Theft Prevention Act."); *Galindo v. E. Cnty. Louth Inc.*, No. 16-CV-9149, 2017 WL 5195237, at *4 (S.D.N.Y. Nov. 9, 2017) ("The settlement amount that Plaintiff is to receive, $5,292, would cover all back wages, liquidated damages, and statutory penalties.").

4

The settlement amount is $87,000 to resolve all claims in this case.  (Mot. 3.)  Plaintiff asserts that if he had prevailed, he would have received $64,040.00 for unpaid wages and overtime.  (*Id.* at 3.)  Plaintiff alleges he worked approximately fifty to fifty-three hours per week from April 11, 2019 through April 26, 2024.  (*Id.*)  Thus, the parties state that "a settlement in the amount of $87,000.00, of which $57,230.55 will be paid to him, addresses Plaintiff's claims for unpaid wages.  It provides him 89.3% of his maximum unpaid wages ($57,230.55/$64,040.00)— a very good settlement."  (*Id.* at 4.)

However, the parties do not address Plaintiff's other potential sources of damages, such as liquidated damages or the failure to provide wage notices.  It may be that this amount is a fair and reasonable settlement amount even when accounting for all sources of damages.  Moreover, it is possible that the parties have already contemplated and included these other sources, since the proposed settlement agreement grants Plaintiff $14,307.64 "in satisfaction of any claims for alleged liquidated damages, penalties and interest."  (Doc. 56-1 at 3.)  However, the parties must explicitly provide information that allows me to understand how the amount to be paid to Plaintiff under any revised settlement amount is fair and reasonable when compared to the "maximum possible recovery."  *Miranda v. Grace Farms, Inc.*, No. 16-CV-1369 , 2022 WL 1771720, at *4 (S.D.N.Y. May 31, 2022) (quoting *Cronk*, 538 F. Supp. 3d at 322).

Accordingly, at this juncture, I cannot find the Settlement Agreement fair or reasonable without additional information.

### B.    *Remaining Provisions*

Although I cannot approve the Settlement Agreement without additional information, I turn to evaluating the remaining provisions.  I have reviewed the remainder of the Settlement

Agreement, and I find the remaining provisions fair and reasonable.  I address the release clause

and the non-disparagement clause in further detail below.

### C.    *Release Clause*

"In FLSA cases, courts in this District routinely reject release provisions that 'waive

practically any possible claim against the defendants, including unknown claims and claims that

have no relationship whatsoever to wage-and-hour issues.'"  *Gurung v. White Way Threading*

*LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F.

Supp. 3d 170, 181 (S.D.N.Y. 2015) and collecting cases).  Moreover, "[i]n the context of a[]

FLSA case in which the Court has an obligation to police unequal bargaining power between

employees and employers, such broad releases are doubly problematic."  *Martinez v. Gulluoglu*

*LLC*, No. 15-CV-2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v.*

*Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).  For

this reason, "[a] number of judges in this District refuse to approve any FLSA settlement unless

the release provisions are 'limited to the claims at issue in this action.'"  *Cionca v. Interactive*

*Realty, LLC*, No. 15-CV-5123, 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016) (quoting

*Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y.

Dec. 15, 2015)).  The Settlement Agreement defines "Released Claims" as

> any and all claims . . . that were or could have been brought arising out of the same
> nucleus of facts that gave rise to the claims asserted against Morgan Group
> Defendants by Plaintiff in this action whether known or unknown, asserted or
> unasserted, arising under federal, state or local law or regulation, based upon any
> conduct occurring from the beginning of time up to and including the date of
> Plaintiff's execution of this Agreement, including, without limitation, any claims
> pertaining to Plaintiff's employment by any of the Morgan Group Defendants or
> any Releasee, his presence at the Properties, and any claim concerning wages, hours
> worked, wage payments, and records related to such wages and hours, or attorneys'
> fees for such claims, under federal, state, or local law or regulation, including, but
> not limited to the Fair Labor Standards Act and the New York Labor Law.

(Doc. 56-1 at 2–3.)  Moreover, the Agreement provides that Plaintiff "hereby voluntarily releases and forever discharges Morgan Group Defendants, and their respective direct and indirect parent companies and their subsidiaries . . . of and from the Released Claims," (*id.* at 5), and duly states that "the Morgan Group Defendants knowingly and voluntarily release and forever discharge Plaintiff of and from any and all claims, debts, obligations or liability whatsoever, whether arising in law or equity, whether known or unknown, that they have or may have against Plaintiff, as of the date of execution of this Agreement, including, but not limited to, any claim pertaining to Plaintiff's employment by any of the Morgan Group Defendants or any Releasee, or his presence at the Properties, as well as all compulsory counterclaims, whether actually asserted or not, related to the Lawsuit," (*id.* at 6).  Given that these release provisions are mutual and expressly limited to claims arising out of this lawsuit, their terms are fair and reasonable.

###    D.    *Non-disparagement Clause*

"[H]ighly restrictive confidentiality provisions" have been recognized to be "in strong tension with the remedial purposes of the FLSA."  *Cheeks*, 796 F.3d at 206 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 177).  Therefore, "unqualified non-disparagement clause[s] . . . cannot withstand scrutiny" under *Cheeks*.  *DePietro v. Levitt LLP*, 706 F. Supp. 3d 375, 377 (E.D.N.Y. 2023) (citation omitted).  However, "not every non-disparagement clause in a[] FLSA settlement is *per se* objectionable." *Nights of Cabiria*, 96 F. Supp. 3d at 180 n.65.  "[P]laintiffs may contract away their right to say things that are insulting or calumnious about the defendants," or even to say anything negative about the defendants, so long as there is "a carve-out for truthful statements about plaintiffs' experience litigating their case." *Id.*

Such is the case here.  Both Plaintiff and Defendants agree to refrain from "conduct, verbal or otherwise, which would materially damage" the "reputation, goodwill or standing" of

both parties in the community.  (Doc. 56-1 at 7.)  However, the Settlement Agreement goes on to

clarify that the non-disparagement clause does "not apply to prevent any Party from making

truthful statements regarding their experiences in the litigation of this Action, or to the

underlying facts and circumstances relating to any claim, the factual foundation of which

involves discrimination, in violation of laws prohibiting discrimination."  (*Id.*)  Since the mutual

non-disparagement clause contains an express carve-out for truthful statements about each

party's experience litigating the case, I find that it is acceptable.

### E.    *Attorneys' Fees*

A district court in this Circuit, in its discretion, may calculate attorneys' fees using either

the lodestar method or the percentage of the fund method.  *See McDaniel v. Cnty. of

Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (citation omitted).  As a general matter, the

"starting point" in determining reasonable attorneys' fees is "the lodestar — the product of a

reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v.

Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation "creates a

'presumptively reasonable fee'" (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v.

Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008))).  The party seeking fees bears the burden of

demonstrating that its requested fees are reasonable, *see Blum*, 465 U.S. at 897, and must provide

the court with sufficient information to assess the fee application, *see N.Y. State Ass'n for

Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983).  "Fees of one-third in

FLSA cases are routinely approved in this Circuit."  *Manley v. Midan Rest. Inc.*, No. 14-CV-

1693, 2017 WL 1155916, at *9 (S.D.N.Y. Mar. 27, 2017) (collecting cases); *see also Zorn-Hill*,

2020 WL 5578357, at *6 ("[C]ourts in the Second Circuit routinely award attorney's fees

in FLSA settlements of one-third of the total recovery." (collecting cases)).  Additionally,

"[c]ourts regularly award lodestar multipliers from two to six times lodestar." *Johnson v. Brennan*, No. 10-CV-4712, 2011 WL 4357376, at \*20 (S.D.N.Y. Sept. 16, 2011) (collecting cases); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (finding that "the lodestar sought by Class Counsel, approximately 6.3 times, falls within the range granted by courts").

The parties state that Plaintiff's counsel will receive $29,000.00 in attorneys' fees and $769.45 in costs.  (Mot. 2.)  This attorneys' fees award is one-third of Plaintiff's total recovery, which is typical in this Circuit.  *See Manley*, 2017 WL 1155916, at \*9 (collecting cases).  The billing records submitted by Plaintiff's counsel of record Delmas A. Costin, Jr., indicate that he charges an hourly rate of $500 and spent 39.40 hours on this matter, which would have amounted to a total bill of $19,700.  (Mot. 7; *see also* Doc. 56-3 at 2.)  This hourly rate falls within what courts in this District have found to be reasonable.  *See, e.g.*, *Alexander v. DRG Hosp. Grp., Inc.*, No. 23-CV-11101, 2024 WL 4789401, at \*3 (S.D.N.Y. Nov. 14, 2024) (approving $500 hourly rate for named partner in *Cheeks* review); *Redzepagic v. Hammer*, No. 14-CV-9808, 2017 WL 1951865, at \*2 n.2 (S.D.N.Y. May 8, 2017) (same).  The 39.40-hour amount spent by Mr. Costin on this matter is also reasonable.  The request for attorneys' fees also includes work performed by Raquel Urena, who practiced law in the Dominican Republic for three years, and whose hourly rate was $175 for 40.5 hours spent on the case, which would have amounted to a total bill of $7,087.50,[1] and two paralegals whose hourly rate was $125 and who spent 8.2 hours total, which would have amounted to a combined bill of $1025.  (Mot. 7–8; *see also* Doc. 56-3 at 7–8.)

---

[1] The parties in their settlement letter indicate that "Ms. Urena spent 40.5 hours on the case for a total of $7,123,33." (Mot. 7.)  Moreover, Plaintiff's billing records also reflect this higher total, likely because Ms. Urena charged $200 per hour for a task on January 8, 2026.  (Doc. 56-3 at 8, 11.)  However, based on my calculations, a $175 rate per hour for a total of 40.5 hours should be $7087.50.  Regardless, the difference between the two figures is negligible, and I find that the attorneys' fees award would be reasonable with either lodestar sum.

9

These rates are also reasonable.  *See Camacho v. Barrier Grp. Inc.*, No. 22-CV-1156, 2025 WL 1269021, at *4–5 (S.D.N.Y. May 1, 2025) (approving $175 hourly rate for attorney); *Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17-CV-273, 2023 WL 3027438, at *1 (S.D.N.Y. Apr. 20, 2023) ("[I]n recent FLSA actions, hourly rates between $100 and $150 for paralegal work have been found to be reasonable." (quoting *Rosales v. Gerasimos Enters., Inc.*, No. 16-CV-2278, 2018 WL 286105, at *2 (S.D.N.Y. Jan. 18, 2018))).  The number of hours spent on this matter, which includes multiple mediation conferences, is also reasonable.  Although the requested amount of attorneys' fees is slightly higher than the lodestar amount, $27,812.50, courts in this district have found similar awards to be fair and reasonable.  *See, e.g.*, *Gonzalez v. Citusa Park Ave., LLC*, No. 20-CV-2326, 2020 WL 8920703, at *2 (S.D.N.Y. Nov. 30, 2020) (granting attorneys' fees award that is "approximately 1.4 times the lodestar amount").

I find the requested attorneys' fees and costs under the Settlement Agreement to be fair and reasonable, although as explained *supra*, I cannot approve the Settlement Agreement at this time without further information.

### III.    Conclusion

For the reasons stated above, I find that the proposed Settlement Agreement cannot be approved at this time without additional information.  Accordingly, the Settlement Agreement is DENIED without prejudice with leave to refile an amended agreement.  Within 21 days of this order, the parties are directed to file an amended agreement addressing the deficiencies noted in this order.

SO ORDERED.

Dated:       June 8, 2026
             New York, New York

Vernon S. Broderick
United States District Judge

10